0583

Randy McCOY d/b/a J & R Paving Company, Respondent
v. LOYD'S INCORPORATED, Appellant.
(338 S. E. (2d) 156)

Court of Appeals

*J. D. Todd, Jr., Leatherwood, Walker, Todd & Mann,* Greenville, *for appellant.*

*James M. Robinson, The Robinson Law Firm,* Easley, *for respondent.*

Nov. 25, 1985.

LITTLEJOHN, Acting Judge:

Randy McCoy, d/b/a J & R Paving Company, Plaintiff-Respondent (subcontractor), brought this action against Loyd's, Incorporated, Defendant-Appellant (contractor), to recover monies allegedly due as a result of an agreement whereby subcontractor was to lay approximately 26,000 square yards of asphalt on properties of South Carolina Electric and Gas Company in Fairfield County. The contractor answered the complaint denying liability and alleging that the subcontractor failed to perform properly, making it necessary to correct substantial defects before the property owner would accept performance. In addition, the contractor counter-claimed for monies alleged to have been spent in correcting the defective job. The subcontractor replied to the counter-claim admitting that his work was turned down by the owner but alleging that the work was defective because the contractor's equipment ". . . broke down and not through any fault of his [subcontractor]." The contractor, at the appropriate stage of the trial, moved for a directed verdict which was overruled. The jury returned a verdict in favor of the subcontractor for $7,700. The contractor moved for judgment notwithstanding the verdict which was denied. It has appealed to this Court submitting that the trial judge erred in failing to grant its motions. We reverse.

The issue involved on appeal appears in the one exception which is as follows:

> The lower court erred in denying defendant's motion for directed verdict and judgment notwithstanding the verdict because the undisputed evidence showed that plaintiff did not properly perform the contract and the cost to defendant for necessary corrective work exceeded any sum which would have still been due plaintiff had he properly performed the contract.

The work performed by the subcontractor was beyond contest defective. The job was redone at considerable expense to the contractor. The only real issue in this case is which party was responsible for the imperfect paving project. The facts are not greatly in dispute.

Under the terms of the contract, the subcontractor was to be paid $11,700 for laying approximately 26,000 square yards of asphalt. The subcontractor was to supply the labor, and the contractor was to supply a paving machine and materials which it did. On a Friday afternoon, the contractor's paving machine, which was operated by the subcontractor's employees, ran over a piece of metal causing a blowout on one of its large tires described as about as high as one's head. Such a tire is not easily repaired and it became necessary to contact a tire company in Columbia, approximately forty miles away. The tire company promised to be on the job at six o'clock Saturday morning such that the laying of asphalt could proceed as scheduled early in the day. When the employees of the tire company arrived, it developed that their air-pump compressor was broken; the repair to the tire could not be completed until about ten or eleven o'clock.

Asphalt had been ordered from a Columbia supplier. Trucks loaded with asphalt began to arrive early in the morning and were lined up for some distance. This asphalt must be maintained at a certain temperature in order to be spread properly. Unless it is unloaded and used within a short period of time, it sets up and cannot be applied.

There is no contention that the paver supplied by the contractor was anything other than proper equipment and not defective. The subcontractor was, on Friday afternoon, aware of the fact that the asphalt would be arriving the next morning. Instead of phoning to stop delivery, he gambled on the likelihood that the tire would be repaired. At argument, it was admitted that the contractor was not aware of what had taken place until three or four days later. Under these facts, we think, to the exclusion of all other inferences, that as between the subcontractor and the contractor, the subcontractor was at fault. While he is the victim of unfortunate circumstances, only he was in a position to avoid the loss. When a loss must be born by one of two parties without fault, the loss should be born by that party who could have prevented the damages. Here the contractor was patently without fault; the subcontractor could have prevented the loss by merely postponing the delivery of the asphalt. The contractor should not have to bear the costs of correcting the defective work. On the other hand, it should be reim-

bursed for the expense it was forced to pay to make performance acceptable. The trial judge erred in failing to grant the motion of the contractor for a directed verdict.

Robert Griswold was an employee of the contractor. He transported the contractor's paving machine to the job site and remained there to "... keep it clean and maintained on the site." William Loyd Patterson, one of the owners of the contractor's business, testified. "He was not supposed to do any paving or work on the site." In addition, the subcontractor had brought a small paving machine of his own for use in small places where the contractor's larger machine could not be utilized. This small machine was inadequate for the overall project; but the subcontractor, faced with the knowledge that the asphalt would become hard and unusable, undertook to spread the asphalt with his own small paver. This resulted in an uneven wavy-surfaced job as contrasted with a smooth-surfaced job which was contracted for and expected. The job, as initially completed, was rejected and had to be redone.

Having determined that the subcontractor was not entitled to recover, we now reach the issue as relates to the counterclaim of the contractor. Our determination is made difficult because the trial judge denied counsel's motion for a directed verdict without permitting him to fully state it into the record. There is, however, in the record sufficient evidence to permit the court to determine the relief which should have been granted at the trial level. The contractor performed its part of the agreement. The subcontractor produced a faulty job which had to be corrected. Under the terms of the contract "... any asphalt work unacceptable which requires redoing this work will be backcharged to subcontractor."

Of the $11,700 consideration stipulated in the contract, $4,000 has been paid to the subcontractor. The testimony relative to the expense which the contractor underwent to correct the job was given by Mrs. Crawford, executive secretary to the contractor, and is uncontradicted. In addition to the $4,000 admittedly paid, the contractor paid Sloan Construction Company $11,783.83 for additional asphalt plus $240 for a tack truck to go before the asphalt was installed, L. A. Barrier and Son $1,355.01 for hauling asphalt, Roy Vaughn $300, Michael Ross $214.50 and Robert Shell and Paul Austin $117.

Simply put, the contractor has parted with $18,010.34 in order to procure a job acceptable to the owner which should have cost only $11,700. Accordingly, as a matter of law, the contractor is entitled to recover its losses from the party responsible therefore to the extent of $6,310.34. We arrive at this figure by subtracting $11,700 from $18,010.34.

The trial judge should have granted the motion for the contractor for a directed verdict. Accordingly, judgment is reversed, and the case is remanded to the trial court for the purpose of entry of judgment for $6,310.34 against Randy McCoy d/b/a J & R Paving Company, the subcontractor, in favor of Loyd's Incorporated, the contractor.

Reversed and remanded.

GARDNER and SHAW, JJ., concur.